IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22/N.E.C.A. HEALTH AND WELFARE TRUST FUND, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:08CV43 |
| vs. | ) ) | ORDER |
| GENESIS ELECTRICAL SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 22).¹ The defendant filed a brief (Filing No. 23) and an index of evidence (Filing No. 24) in support of the motion. The plaintiffs filed a brief (Filing No. 25) and an index of evidence (Filing No. 26) in opposition to the motion. The defendant filed a brief (Filing No. 27) and an index of evidence (Filing No. 28) in reply. The plaintiffs then sought leave to file a sur-reply (Filing No. 29), the proposed sur-reply brief (Filing No. 29-2) was attached to the motion. As an initial matter, the plaintiffs' motion for leave to file the sur-reply is granted. The court will also address the plaintiffs' Motion to Compel (Filing No. 32) and the defendant's Motion to Bifurcate Discovery (Filing No. 35), which have been fully briefed. For the reasons stated below, the court concludes the defendant's motion for summary judgment should be denied.

### INTRODUCTION

This action arises pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1132 and 1145. The plaintiffs allege they are fiduciaries and employee benefit plans, pursuant to ERISA,

---

¹ As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue underlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

seeking to collect fringe benefit contributions from the defendant, an employer. **See** Filing No. 1 - Complaint. The plaintiffs allege the defendant is obligated to pay certain fringe benefit contributions into the plaintiff benefit funds pursuant to collective bargaining agreements (CBAs) entered into between the defendant and the plaintiff International Brotherhood of Electrical Workers, Local Union No. 22 (IBEW Local 22). *Id.* ¶ 17. The plaintiffs allege the defendant has been in breach of the agreement by its failure to make contributions based upon covered work performed by the defendant's employees, since December 2006. *Id.* ¶¶ 21, 23. The defendant denies benefit contributions are owed. **See** Filing No. 8 - Answer. The undersigned magistrate judge is specially designated to exercise jurisdiction over this matter, pursuant to 28 U.S.C. § 636 and after the consent of the parties. **See** Filing No. 15.

The defendant moves for summary judgment on the plaintiffs' claims because the defendant asserts it withdrew and cancelled its letters of assent to both the Inside Wireman CBA and the Residential CBA on May 23, 2007. Specifically, the defendant alleges the letters of assent were withdrawn when the defendant obtained one-man unit status, without any intentions to hire additional workers to perform work in the bargaining units. The defendant contends any obligation to make fringe benefit contributions arose from those CBAs, and such obligation ended when the CBAs were terminated. Accordingly, the defendant urges the court to determine the CBAs were properly and effectively repudiated on May 23, 2007.

The plaintiffs oppose summary judgment. The plaintiffs contend the defendant failed to use the proper bargaining unit to determine one-man status and, in any event, such defense is not proper in this action. Additionally, the plaintiffs state additional discovery is necessary prior to the determination of the defendant's motion.

## UNCONTROVERTED FACTS

**A.    The Collective Bargaining Agreements**

1.    The Nebraska Chapter of the National Electrical Contractors Association (NECA) and IBEW Local 22 were parties to the Inside Wireman CBA beginning on June 1, 2004, to remain in effect until May 31, 2007. **See** Filing No. 24-2 at p. 6 - Ex. 2.

2. NECA and IBEW Local 22 were also parties to the Residential CBA beginning on April 1, 2003, to remain in effect until March 31, 2006. *Id.* at p. 29 - Ex. 3.

3. On or about April 1, 2006, a new Residential CBA went into effect and was to continue until March 31, 2009. *Id.* Ex. 1 Bryant Moran Aff. ¶ 13.

4. The Inside Wireman CBA and Residential CBA, which are multi-employer agreements, require signatory employers to contribute to the plaintiff benefit funds. *Id.*

5. On May 20, 2005, the defendant signed a Letter of Assent to be bound by the Inside Wireman CBA. *Id.* at p. 50 - Ex. 4.

6. On September 14, 2005, the defendant signed a Letter of Assent to be bound by the Residential Agreement. *Id.* at p. 51 - Ex. 5.

7. On May 23, 2007, the defendant, through its president Bryant K. Moran, sent a letter to IBEW Local 22 giving notice that the defendant "withdraws and cancels its letter of assent to the Inside Wire Agreement effective today." **See** Filing No. 24-3 at p. 27 - Ex. 8.

8. On May 23, 2007, the defendant, through its president Bryant K. Moran, sent a letter to IBEW Local 22 giving notice that the defendant "withdraws and cancels its letter of assent to the Residential Agreement effective today." **See** *Id.* at p. 26 - Ex. 7.

9. The defendant's contribution obligations under the CBAs are based upon hours worked by its employees. **See** Filing No. 26-2 Ex. 1 Lauren M. Fletcher Aff. ¶ 11.

10. As of January 18, 2007, the defendant employed only one person in the Residential bargaining unit and one person in the Inside Wireman bargaining unit. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 16.

11. The defendant employed Douglas M. Stewart in the Residential bargaining unit between January 1, 2007 and January 9, 2007. *Id.* ¶ 18; **see also** Filing No. 24-3 Ex. 6 Payroll Register p. 1.

12. The defendant employed John J. Yost, Sr. in the Residential bargaining unit between January 18, 2007 and May 30, 2007. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 19; **see also** Filing No. 24-3 Ex. 6 Payroll Register pp. 2 - 14.

13. The defendant employed Thomas C. Malik in the Residential bargaining unit between June 8, 2007 and July 26, 2007. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 20; **see also** Filing No. 24-3 Ex. 6 Payroll Register pp. 15 - 19.

14. The defendant employed William Yost in the Inside Wireman bargaining unit between January 4, 2007 and May 23, 2007. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 21; **see also** Filing No. 24-3 Ex. 6 Payroll Register pp. 1 - 14.

15. The defendant employed David A. Brandom in the Inside Wireman bargaining unit between June 14, 2007 and December 31, 2007. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 22; **see also** Filing No. 24-3 Ex. 6 Payroll Register pp. 15 - 24.

16. After Thomas C. Malik's employment ended on July 26, 2007, David A. Brandom was assigned to do both Inside Wireman bargaining unit work and Residential bargaining unit work. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 23.

17. As of May 23, 2007, the defendant had no plans or intentions to hire additional persons in either the Inside Wireman or Residential bargaining units. **See** *Id.* ¶¶ 24, 26, 30.

18. As of May 23, 2007, the defendant did employ and, in fact, had for some time employed, only one (1) employee in the Residential bargaining unit. **See** *Id.* ¶ 24; **see also** Filing No. 24-3 at p. 26 - Ex. 7 Moran Cancellation Letter.

19. As of May 23, 2007, the defendant did employ and, in fact, had for some time employed, only one (1) employee in the Inside Wireman bargaining unit. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 29; **see also** Filing No. 24-3 at p. 27 - Ex. 8 Moran Cancellation Letter.

20. For these reasons, on May 23, 2007, the defendant notified Gary Kelly, Business Manager of IBEW Local 22, that based upon reaching a one-man bargaining unit status, the defendant was withdrawing and canceling the letter of assent to the Residential CBA and the Inside Wireman CBA, by separate letters. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶¶ 27, 31, 32; **see also** Filing No. 24-3 at pp. 26, 27 - Ex. 7 and Ex. 8 Moran Cancellation Letters.

21. Between December 12, 2006 and the present, Bryant K. Moran has owned no fewer than 675 shares of the defendant. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 33; **see also** Filing No. 24-3 at p. 28 - Ex. 9 Jeffrey T. Palzer Aff.

22. Between December 12, 2006 and the present, Bryant K. Moran's son, Bryant K. Moran, II, has owned and continues to own 75 shares of the defendant. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶ 35; **see also** Filing No. 24-3 at p. 28 - Ex. 9 Jeffrey T. Palzer Aff.

23. Neither Bryant K. Moran's nor Bryant K. Moran, II's ownership interest in the defendant has changed since December 12, 2006. **See** Filing No. 24-2 Ex. 1 Bryant Moran Aff. ¶¶ 34, 36.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); **see** *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248 ). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the</u>

6

> movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1) (emphasis in original).

## ANALYSIS

### A.    One-Employee Unit Rule

In 1980, Congress amended ERISA by adding section 515, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

A civil action may be initiated by a fiduciary for or on behalf of a plan to enforce section 515 and collect damages including any unpaid contribution, interest, liquidated damages and attorney's fees.  **See** ERISA § 502(g)(2), codified at 29 U.S.C. § 1132(a) and (g)(2).  "Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts."  *Laborers Health & Welfare Trust Fund For N. Cal. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 548 (1988) (referring to both sections 515 and 502(g)(2)).

Section 515 "creates a federal right of action independent of the contract on which the duty to contribute is based. . . . Congress intended that this section would simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans."  *Central States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1348-49 (8th Cir. 1990) (*Independent Fruit*) (internal quotation and citations omitted).  Thus, section 515 places "a pension fund in a better position than that which it would otherwise occupy in relation to the collective bargaining agreement."  *Id.* at 1348.  A section 515 action "cannot be thwarted by defenses not apparent from the face of the Agreement." *Id.* at 1349 (quotation omitted).  Accordingly, "courts recognize only two defenses to a

7

collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void." *Id.* at 1349 (noting avoidance of "various contract formation defenses.") (**citing *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d 1990)**). The **Benson** court clarified the CBA must be void, rather than merely voidable. *Benson*, 907 F.2d at 314. That is, "once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.* Nevertheless, "[u]nder ERISA § 515, the Funds may collect only those contributions that [the employer] is contractually obligated to pay." *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 582 (8th Cir. 2000). Further, "an employer is liable under section 515 only for the effective period of the collective bargaining agreement." *Benson*, 907 F.2d at 316 (**citing *Advanced Lightweight*, 484 U.S. at 548**). Moreover, once an employer manifests an intention to abide by the terms of a successor collective bargaining agreement, the employer will be bound to the successor agreement until its expiration. *CAB Assoc.*, 340 NLRB 1391, 1402 (2003).

The plaintiffs' claim for breach of the collective bargaining agreements stem from the Inside Wireman CBA and/or the Residential CBA. The plaintiffs state these agreements constitute the written obligation on the part of the defendant to make timely fringe benefit contributions. The agreements specifically require individual employers to contribute money for fringe benefits to the plaintiff benefit funds. **See, e.g.,** Filing No. 24-2 at p. 6 - Ex. 2 §§ 6.01 through 9.04; *Id.* at p. 29 - Ex. 3 §§ 6.01 through Art. IX § 4.

The defendant argues its contractual obligation to pay ceased when the defendant sent the May 23, 2007 letters to withdraw the earlier letters of assent to the Inside Wireman CBA and the Residential CBA. The defendant relies on the one-employee unit rule to support its early withdrawal from the CBAs. The one-employee unit rule, as relied upon by the defendant, is described in a National Labor Relations Board (NLRB) opinion:

> It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of

> employment without affording a union an opportunity to bargain.

*Stack Electric, Inc.*, 290 NLRB 575, 577 (1988); **see** *Miner v. Local 373*, 513 F.3d 854, 863 & n.6 (8th Cir. 2008).

Section 8(a)(5) of the National Labor Relations Act (NLRA), provides

> It shall be an unfair labor practice for an employer–
>     (5) to refuse to bargain collectively with the representatives of his employees, . . . .

29 U.S.C. § 158(a)(5).

Further, section 8(f) relates to agreements covering employees in the building and construction industry. **See** 29 U.S.C. § 158(f). "In *Deklewa*, the NLRB broke from the previous interpretation of Section 8(f) . . . and held that 'pre-hire' agreements made pursuant to Section 8(f) are 'binding, enforceable, and not subject to unilateral repudiation' throughout their term." *Cedar Valley Corp. v. N.L.R.B.*, 977 F.2d 1211, 1215 (8th Cir. 1992) (**citing** *John Deklewa & Sons*, 282 NLRB 1375, 1389 & n.62 (1987), enfd. by 843 F.2d 770 (3d Cir. 1988)). "Numerous NLRB decisions since *Deklewa* have found that the one-employee unit rule is applicable to § 8(f) agreements, and have applied the rule with reference to the individual employer's workforce rather than that of the multi-employer association." *Whiting-Turner Contracting Co. v. Local Union No. 7*, 15 F. Supp. 2d 162, 165 (D. Mass. 1998).

The defendant employed only one person assigned to do Residential bargaining unit work or Inside Wireman bargaining unit work from January 1, 2007.[2] At times, the same single employee was assigned to do both types of work. Accordingly, the defendant argues it reached one-employee unit status on January 1, 2007, for the purposes of each the Residential bargaining unit and the Inside Wireman bargaining unit. Based on this status and because the defendant had no intentions of increasing the number of employees in those units, the defendant sent a letter to withdraw the letters of assent to both the Residential CBA and Inside Wireman CBA. The defendant asserts its termination

---

[2] The parties do not dispute Bryant K. Moran and his son, Bryant K. Moran, II, should not be counted as employees for purposes of the one-employee unit rule. **See** 29 U.S.C. § 152(3); *Kirkpatrick Electric Co., Inc.*, 314 N.L.R.B. 1047, 1053 (1994).

9

of the CBAs were proper and such repudiation renders the agreements void, not merely voidable. Thus, the defendant argues, it should have no obligation to continue paying into the plaintiff benefit funds after May 23, 2007.

The plaintiffs dispute whether the one-employee unit status is properly applied. First, the plaintiffs contend the proper bargaining unit, when evaluating a multi-employer agreement, is not the single employer (here the defendant), but all of the employer signatories to the CBA. The plaintiffs rely on *Sebastian Electric*, which states:

> Moreover, as this court has specifically held with respect to multi-employer agreements, "[t]he correct unit for measuring Union majority status is not the employees of one separate company, but the employees of all the employer signatories to the contract."

*Local Union 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Sebastian Elec.*, 121 F.3d 1180, 1185 (8th Cir. 1997) (internal quotation and citation omitted).

The issue before the *Sebastian Electric* court was union majority status, rather than the one-employee unit rule. It is clear from NLRB decisions and other case law that the one-employee unit rule is measured "with reference to the individual employer's workforce rather than that of the multi-employer association." *Whiting-Turner*, 15 F. Supp. 2d at 165; **see also** *CAB Assoc.*, 340 NLRB 1391, 1403 (2003); *Kirkpatrick Electric*, 314 NLRB 1047, 1049-50, 1052-53 (1994); *Haas Gargage Door Co.*, 308 NLRB 1186, 1187 (1992). Further, the one-employee unit rule may logically be measured only by reference to the single employer because the rule originated as an exception to the *Deklewa* holding making Section 8(f) contracts "binding, enforceable, and not subject to unilateral repudiation" by an individual employer. See *John Deklewa*, 282 NLRB at 1389.

Second, the plaintiffs argue the one-employee unit rule is not valid in an ERISA section 515 suit. Specifically, the plaintiffs contend the one-employee unit rule may release the defendant from obligations under the NLRA, but the defense is ineffective as against the plaintiffs, who are considered holders in due course under the contract and enjoy greater protection under section 515. The defendant does not dispute the plaintiffs' status or protections afforded by the law. However, the defendant argues its repudiation of the CBAs is effective against the plaintiffs, who had actual notice of the repudiation.

Alternatively, the defendant argues the CBAs naturally expired on their own terms, on May 31, 2007 (Inside Wireman CBA) and March 31, 2006 (Residential CBA), thus extinguishing the defendant's obligations.

The defendant, in this case, does not assert a defense apparent from the face of the agreements, the contributions would not be illegal and the defendant's repudiation of the agreements does not render them void. Merely because the defendant's conduct may not constitute an unfair labor act, does not preclude liability under ERISA. The defendant's repudiation of the agreements based on its one-employee unit status may relieve the defendant of its obligation to negotiate with the IBEW Local 22, however it does not relieve the defendant of its contractual obligations regarding the plaintiff benefit funds. This result is required by Eighth Circuit law. See *Berry v. Garza*, 919 F.2d 87 (8th Cir. 1990) (employer knowingly entered facially valid CBA so lack of majority status did not render agreement void); *Independant Fruit*, 919 F.2d at 1348-49. In so holding, this court is in agreement with opinions in the Seventh Circuit, upon which the Eighth Circuit has previously relied. See *Central States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 670-71 (7th Cir. 2005) (holding decertification of union not a defense to 29 U.S.C. § 1145 liability); *Martin v. Garman Const. Co.*, 945 F.2d 1000, 1004 (7th Cir. 1991) ("The district court properly refused to permit the one-man rule to impair the contract's validity under 29 U.S.C. § 1145."); *Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989) (en banc) ("If the employer simply points to . . . the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law-it must still keep its promise to the pension plans.").

In contrast, however, the Ninth Circuit determined the employer's "unilateral repudiation of the CBA in this one-employee unit situation was lawful. The CBA in this case is therefore void, not merely voidable." *Laborers Health & Welfare Trust Fund for N. Cal. v. Westlake Dev.*, 53 F.3d 979, 984 (9th Cir. 1995) (**citing** *Alaska Trowel Trades Pension Fund v. Lopshire*, 855 F. Supp. 1077, 1082 (D. Alaska 1994)). The ***Westlake*** court apparently relies on the reasoning that since the repudiation caused the collective bargaining agreement to become inoperative prospectively, it thereafter had no force or legal effect. See *Alaska Trowel*, 855 F. Supp. at 1082 (relying on ***Sheet Metal Workers'***

*Int'l Assoc., Local 206 v. West Coast Sheet Metal*, 954 F.2d 1506, 1509 (9th Cir. 1992) ("A contract to contribute to a trust fund of a union with which [the employer] has no ongoing collective bargaining relationship makes no sense."). In *West Coast Sheet Metal*, the Ninth Circuit had earlier reversed a district court which had "held that the only recognizable defenses to fully enforcing an employer's obligation to contribute to a trust fund are that the contributions are illegal or that the collective bargaining agreement is void ab initio" because affirming would lead to "an arbitrary result." *West Coast Sheet Metal*, 954 F.2d at 1509 (where the relationship between employer and union had been terminated by vote of the employees), distinguishing *Berry*, 919 F.2d at 87 (where employer knowingly enters into agreement, obligation for payment of benefits remains despite lack of majority status). This is contrary to the law in the Eighth Circuit because here the existence of a valid CBA is not a requisite for an ERISA claim. *Berry*, 919 F.2d at 89 (**citing** *Gerber Truck*, 870 F.2d at 1148); **accord** *Benson*, 907 F.2d at 316 (recognizing the result may seem harsh, but an employer is liable under section 515 only for the effective period of the collective bargaining agreement) (**citing** *Advanced Lightweight*, 484 U.S. at 548)). For this reason, the court declines to follow the *Westlake* opinion.

B.   **Jurisdiction**

In the reply brief, the defendant raises an issue about whether this court has subject matter jurisdiction and, assuming it does, whether the matter should be stayed pending resolution of certain issues by the NLRB. The defendant challenges this court's subject matter jurisdiction over the parties' dispute. Specifically, the defendant contends that since the defendant had no contractual obligation to pay contributions to the plaintiff benefit funds, that is because the defendant had no intent to pay beyond May 23, 2007, jurisdiction cannot be based upon 29 U.S.C. § 1145. However, as stated above, the defendant's May 23, 2007 conduct did not relieve the defendant of its contractual obligations regarding the plaintiff benefit funds. Further, the parties' dispute is not based on postcontract contributions discussed in *Advanced Lightweight*, 484 U.S. at 548. Since enforcement claims by a fiduciary under ERISA may be brought in federal court only, 29

12

U.S.C. § 1132(e)(1), subject matter jurisdiction exists here. Further, no stay should be granted pending an NLRB determination. First, there is no pending charge before the NLRB. Second, the defendant has failed to meet its burden to show such a stay would serve the interests of fairness, efficiency or judicial economy.

**C.     Discovery**

On September 4, 2008, the plaintiffs filed a motion to compel (Filing No. 32).[3] The plaintiffs filed a brief (Filing No. 33) and an index of evidence (Filing No. 34) in support of the motion. In response, the defendant filed a Motion to Bifurcate Discovery (Filing No. 35) with a brief (Filing No. 36). The plaintiffs filed a brief (Filing No. 37) in support of the motion to compel and in opposition to the motion to bifurcate.

The plaintiffs seek to compel documents responsive to earlier served Requests for Production for the time period between January 1, 2008 and the present. The defendant refused to produce the documents based on its belief no obligation existed to the plaintiff benefit funds after May 23, 2007. On this basis, the defendant objected to production stating the requests are "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." The defendant states it is a small family owned business. Accordingly, the defendant requests that if the court requires production of the "large amount of documentation," then discovery should be bifurcated as the documents are related only to damages. The plaintiff disputes the information relates only to damages, but describes the information's relevance to the one-employee unit defense and the defendant's continued obligation to the plaintiffs.

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise

---

[3] The plaintiffs' motion was filed after alleging incomplete discovery impaired their response to summary judgment. In the plaintiffs' brief opposing summary judgment, the plaintiffs argue they cannot present facts essential to justify their opposition because additional discovery must necessarily be taken, including responses to certain written discovery and depositions. The court finds the posture of this case as having arguably incomplete discovery did not materially impact resolution of the motion for summary judgment.

issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993). The party resisting discovery has the burden to show facts justifying its objections by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. **See** *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).

Based on the court's resolution of the defendant's motion for summary judgment, the court also finds the plaintiffs' requests for 2008 documents are relevant.[4] Further, the defendant has failed to meet its burden of showing the requests are otherwise overly broad or unduly burdensome. Accordingly, the plaintiffs' motion to compel will be granted. By the same principle, the defendant has failed to show the necessity of delaying relevant discovery production. Thus, the defendant's motion to bifurcate discovery is denied.

The court does not find the imposition of sanctions to be warranted in this case and will not assess sanctions against any party with regard to the instant discovery dispute. The defendant's position on discovery was substantially justified based on the arguments raised in the motion for summary judgment. **See** Fed. R. Civ. P. 37(a). Upon consideration,

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 22) is denied.

2. The plaintiff's Motion for Leave to File an Opposition Brief to Defendant's Reply Brief in Support of Motion for Summary Judgment (Filing No. 29) is granted. The sur-reply was considered *instanter*.

---

[4] The undisputed facts show a renewed Residential CBA went into effect on April 1, 2006, and was to continue until March 31, 2009.

3.     The plaintiffs' Motion to Compel (Filing No. 32) is granted.  The defendant shall have to **on or before October 23, 2008**, to supplement its responses to the plaintiffs' Requests for Production.

4.     The defendant's Motion to Bifurcate Discovery (Filing No. 35) is denied.

5.     A telephone conference with the undersigned magistrate judge will be held on **October 27, 2008, at 10:30 a.m.** for the purpose of reviewing the preparation of the case to date and the scheduling of the case to trial.  Plaintiffs' counsel shall initiate the call.

Dated this 3rd day of October, 2008.

BY THE COURT:

 s/Thomas D. Thalken
 United States Magistrate Judge